**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **EAGLE FRUIT TRADERS, LLC,** | |
| **Plaintiff,** | **Civil Action No. 18-14541 (ES) (SCM)** |
| **v.** | |
| **ULTRA FRESH, LLC,** *et al.*, | **OPINION** |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff Eagle Fruit Traders, LLC's ("Plaintiff") motion for default judgment against defendants Ultra Fresh, LLC ("Ultra"), Michael Felix, and William Hidalgo (collectively "Defendants"). (D.E. No. 17). Also before the Court is Ultra and Felix's cross-motion to set-aside the entry of default. (D.E. No. 57). The Court has considered the relevant submissions and decides these motions without oral argument. *See* Fed. R. Civ. P. 78.1(b); L. Civ. R. 78.1(b). For the reasons that follow, the Court DENIES Ultra and Felix's cross-motion, and GRANTS-in-part and DENIES-in-part Plaintiff's motion for default judgment.

**I.      Background**

The Court assumes the parties' familiarity with the facts of this case and intends for this Opinion to be read in conjunction with the Court's prior Opinions. (*See* D.E. Nos. 19 & 37). As such, the Court discusses only the relevant procedural history.

Plaintiff initiated this action on October 1, 2018, asserting breach of contract claims and claims under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. 499a, *et seq.* (*See* D.E. No. 1 ("Compl.")). On or about October 11, 2018, the parties reached a tentative

agreement for a payment plan. (D.E. No. 4-3 ¶ 12). Defendants, however, failed to execute the agreement, failed to make the first payment, and ceased all communications with Plaintiff. (D.E. No. 4-3 ¶ 12). Plaintiff then filed a motion for an order to show cause with temporary restraints. (D.E. No. 4).

The Court held a hearing on October 25, 2018, during which an out-of-state attorney, Bruce Levinson, appeared telephonically on behalf of Ultra and Felix. (*See* D.E. No. 7). Levinson stated that he did not represent Hidalgo, who, to his knowledge, was hospitalized at the time. (TRO Hr'g Tr. at 2:20–25, Oct. 25, 2019). The Court reserved its decision on Plaintiff's motion and the parties then appeared before the Honorable Steven C. Mannion, U.S.M.J., where the parties reached a new settlement. (*See* D.E. Dated 10/25/2018). On October 31, 2018, however, Plaintiff advised that Ultra and Felix had repudiated this new settlement. (D.E. No. 8).

Thereafter, the Court issued an Opinion and Order temporarily restraining Defendants from dissipating the PACA trust assets and ordering Defendants to show cause why they should not be preliminarily enjoined. (D.E. Nos. 10 & 13). Plaintiff served the Court's Order upon Levinson, as well as upon Ultra and Felix directly via e-mail and overnight mail to both Ultra's principal place of business and Felix's home address. (D.E. No. 14).

On November 5, 2018, Plaintiff moved for an entry of default after Defendants failed to file an answer (D.E. No. 11), which was granted on November 7, 2018. Thereafter, Plaintiff filed the instant motion for default judgment (D.E. No. 17), which it served directly upon Levinson and Defendants (D.E. No. 59 at 9 (CM/ECF Pagination)). On November 9, 2018, the Court scheduled a telephone conference for November 13, 2018, after Defendants failed to file a response to the order to show cause. (D.E. Date 11/09/2018). Plaintiff served Levinson and Defendants with notice of the conference, as well as with a copy of Plaintiff's proposed unopposed preliminary

injunction order. (D.E. No. 16). Still, Defendants failed to appear or communicate with either the Court or Plaintiff. Thus, on November 16, 2019, the Court issued an Opinion and Order preliminarily enjoining Defendants. (D.E. Nos. 19 & 20).

It is undisputed that Plaintiff then served Ultra and Felix directly with a copy of the Court's preliminary injunction Order through e-mail, facsimile, and overnight deliveries to Ultra's principal place of business and Felix's home address. (*See* D.E. No. 22). Despite this, Defendants still failed to appear or communicate with the Court, and failed to abide by the requirements of the Court's preliminary injunction Order. (*See* D.E. No. 37 at 4). Consequently, Plaintiff filed a motion to hold Defendants in contempt. (D.E. No. 23).

On December 6, 2018, the Court issued an order to show cause scheduling a hearing for January 4, 2019. (D.E. No. 24). Plaintiff again served Ultra and Felix directly with Plaintiff's motion to hold them in contempt, as well as with the Court's December 6, 2018 Order. (D.E. Nos. 25 & 33–34). Defendants again failed to appear or file any responsive papers. Instead, the Court received an unsigned *pro se* letter from "Ultra Fresh LLC," dated December 16, 2018. (D.E. No. 30). This letter requested that the Court adjourn the contempt hearing due to Hidalgo's health, and peculiarly asserted that "Mr. Michael Felix has not had ownership in Ultra Fresh LLC since June ,28 2018 [sic]." (*Id.*). The Court denied the request and ordered the Clerk to serve the Order via overnight mail to Felix's home address and Ultra's principal place of business. (D.E. No. 31).

On January 4, 2019, Defendants failed to appear at the scheduled hearing. (D.E. No. 32). On January 10, 2019, the Court issued an Opinion and Order finding Ultra and Felix in contempt for their failure to follow the Court's orders. (D.E. Nos. 36 & 37). The Court denied Plaintiff's contempt motion as to Hidalgo, because Plaintiff had failed to properly serve him. (D.E. No. 37 at 8:24–9:24). Despite being served with the contempt Order, Defendants still made no formal

appearance before this Court.  (*See* D.E. No. 38).

On January 15, 2019, Plaintiff filed a letter noting that it had been contacted by Defendants' "workout specialist," who provided Plaintiff some of the financial documents required by the preliminary injunction Order.  (D.E. No. 39).  However, Plaintiff noted that Defendants had failed to provide all the required information about Ultra, and had provided no information regarding affiliates of Ultra, whose bank accounts had received "repeated transfers" from Ultra's bank accounts.  (D.E. No. 43).

On January 24, 2019, the Court scheduled a telephone conference and warned that Felix's failure to "appear telephonically at this conference and/or to fully comply with the Court's 1/10/2019 Contempt Order may result in the issuance of a warrant for his arrest . . . ."  (D.E. Dated 01/24/2019).  On January 25, 2019, Felix, Defendants' workout specialist, and Felix and Ultra' current counsel appeared telephonically before the Court for the first time.  (D.E. No. 50). Thereafter, Defendants produced approximately 261 pages of material to Plaintiff, after which Plaintiff withdrew its request for further sanctions and requested that the Court rule on its default judgment motion.  (D.E. No. 54).  After another telephone conference, the Court set a briefing schedule allowing Ultra and Felix to file a cross-motion to set aside the default.  (D.E. No. 55). Ultra and Felix filed their cross motion (D.E. No. 57), to which Plaintiff responded (D.E. No. 59). Ultra and Felix did not file a reply, despite having that opportunity.

## II.    **Legal Standard**

Under Federal Rule of Civil Procedure 55, default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).  A plaintiff, however, is not entitled to entry of default judgment as a right. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  "Default judgment is permissible only

if the plaintiff's factual allegations establish the right to the requested relief." *E. Constr. & Elec. Inc. v. Universe Techs., Inc.*, No. 2011 WL 53185, at *3 (D.N.J. Jan. 6, 2011). Therefore, before entering default judgment "the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Additionally, the Court must determine whether default judgment is appropriate by making factual findings as to "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct" taken willfully and in bad faith. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

The district court also has the discretion to set aside an entry of default for good cause. Fed. R. Civ. P. 55(c); *Bailey v. United Airlines*, 279 F.3d 194, 204 (3d Cir. 2002). When determining whether to set aside the entry of default, the court weighs the same three *Chamberlain* factors. *See Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73–74 (3d Cir. 1987); *Hritz*, 732 F.2d at 1181. In weighing the factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort. *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 867–68 (3d Cir. 1984). To this end, district courts must resolve all doubts in favor of proceeding on the merits. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

## III.    Discussion

Plaintiff moves for default judgment against all three Defendants. While Hidalgo has not appeared at all, Ultra and Felix filed a cross-motion to set aside the entry of default. For the reasons

that follow, the Court denies Plaintiff's motion for default judgment as to Hidalgo *without prejudice*, denies Ultra and Felix's cross-motion to set aside the default, and grants Plaintiff's motion for default judgment against Ultra and Felix.

### A.    Hidalgo

Before the district court can enter default judgment against a defendant, the plaintiff must show that the defendant was properly served. *See Moroccanoil Inc.*, 2015 WL 6673839, at *1. An individual may be served by:

> (1) following state law for serving a summons in . . . the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1)–(2). New Jersey Rule 4:4-4 mirrors Rule 4(e)(2). N.J. Ct. R. 4:4-4(a)(1).

Here, Plaintiff has failed to show that it properly served Hidalgo. Although the Certification of Service for Hidalgo marked the option "Served personally upon the defendant," the Certification goes on to state that the summons was left with Felix at Ultra's business address. (D.E. No. 3 at 4). The Certification also includes a comment noting that the server was "unable to personally serve entity" because "[e]ntity is usually not around. He is usually in the New York area doing business." (*See id.*). Thus, it appears that Hidalgo was not, in fact, personally served. *See* Fed. R. Civ. P. 4(e)(2)(A). Moreover, nothing in this record evidences that Felix is Hidalgo's "agent authorized by appointment or by law to receive service of process," or that Ultra's business address is also Hidalgo's "dwelling or place of abode." *See* Fed. R. Civ. P. 4(e)(2)(B) & (C). Because Plaintiff has not sufficiently shown that it properly served Hidalgo, default judgment is improper. *See, e.g.*, *Hoist v. New Jersey*, No. 12-5370, 2013 WL 5467313, at *5 (D.N.J. Sept. 30,

2013).  Therefore, the Court denies Plaintiff's motion for default judgment as to Hidalgo *without prejudice*.[1]

## B.    Ultra and Felix

As the Court explains below, the Court denies Ultra and Felix's cross-motion to set aside the default and grants Plaintiff's motion for default judgment.

### 1.    Motion to Set Aside the Entry of Default

To determine whether to set aside the entry of default, the Court must consider (i) whether the defendant has a meritorious defense; (ii) whether the defendant was culpable for its default; and (iii) whether the plaintiff will suffer prejudice.  *See $55,518.05 in U.S. Currency*, 728 F.2d at 195; *Sambrick*, 834 F.2d at 73.  Here, Ultra and Felix do not meet their burden to set aside the entry of default.

#### a.    Meritorious Defense

As an initial matter, Ultra and Felix fail to demonstrate a meritorious defense to this action.  A meritorious defense is "presumptively established when the 'allegations of defendant's answer, if established at trial, would constitute a complete defense to the action.'"  *Hritz*, 732 F.2d at 1181 (quoting *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).  This requires the defendant to "set forth with some specificity the grounds for his defense."  *Id.* (citation omitted).  "Simple denials or conclusionary statements" in defendants proposed answer are not enough.  *$55,518.05 in U.S. Currency*, 728 F.2d at 195.  The reviewing court "looks at the substance of that defense to determine whether it is meritorious."  *Id.* (citation omitted).  Importantly, the Third Circuit Court of Appeals has always described this element as requiring a

---

[1]      Plaintiff may file supplemental briefing to demonstrate that Hidalgo was properly served.  To the extent Plaintiff can show proper service, Plaintiff must also brief and clarify the appropriateness of granting default judgment against Hidalgo in light of indications on this record that Hidalgo may be hospitalized.  (D.E. No. 30; D.E. No. 37 at 9; TRO Hr'g Tr. at 2:20–25).

"complete defense" to the action. *See, e.g.*, *id.*; *Hritz*, 732 F.2d at 1181; *Gross v. Stereo Component Systems Inc.*, 700 F.2d 120, 122 (3d Cir. 1983); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951).

Ultra and Felix do not offer a complete defense. In fact, Ultra and Felix's Proposed Answer admits that "Ultra owes Eagle $30,665 for [perishable agricultural commodities ("Produce")] sold by Eagle to Ultra." (Proposed Answer ¶¶ 11, 13, 17 & 18). And notably, Ultra and Felix's prior counsel, Levinson, admitted Defendants' liability on the record: "No one is disputing the debt [or is] giving some lame excuse about, oh, these pineapples were rotting. My client acknowledges that it owes the debt." (TRO Hr'g Tr. at 10:25–11:3). Instead, Ultra and Felix now claim that they do not owe Plaintiff the claimed principal amount of $44,800, because Plaintiff owes Ultra certain "credits" in the total amount of $14,145. (*See* D.E. No. 57-2 at 4–5 (citing 57-1 ¶¶ 13 & 18)). In other words, Ultra and Felix only dispute the amount of damages owed, not their liability. But such a defense, even if established at trial, does not constitute a "complete defense to the action" and is therefore not a meritorious defense. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195; *Atlas Commc'ns, Ltd. v. Waddill*, No. 97-1373, 1997 WL 700492, at *3 (E.D. Pa. Oct. 31, 1997) (holding that the defendant's dispute as to the amount of damages did "not justify setting aside the default" and that such "partial defense is relevant to damages, rather than liability"). After all, "[t]he district court has considerable latitude in determining the amount of damages" and may, if necessary, hold an evidentiary hearing pursuant to Rule 55(b)(2) to determine the proper amount of damages. *See Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009). And as the Court explains below, Ultra and Felix fail to even establish a prima facie claim for any of these credits. (*See infra* Part III.B.2.c.).

The Proposed Answer raises only two other partial defenses: that Count Three (Breach of

Contract—Failure to Pay for Goods Sold – Ultra) and Count Six (Interest and Attorneys' Fees) fail to state a cause of action, and that Plaintiff is barred from claiming attorneys' fees due to "Plaintiff's wrongful conduct." (Proposed Answer at 3). However, the Proposed Answer does not raise a defense as to Count One (PACA—Failure to Pay Trust Funds), Count Two (PACA—Failure to Pay Promptly), or Count Four (Unlawful Dissipation of Trust Assets by a Corporate Official – Felix). Thus, even if Ultra and Felix could establish a meritorious defense as to Count Three and Count Six, they fail to meet their burden of making a prima facie showing of a "complete defense to the action." *See Re Cmty. Holdings II, Inc. v. Ecullet, Inc.*, No. 16-0304, 2016 WL 5868072, at *3 (D.N.J. Oct. 7, 2016) ("It is insufficient to set forth allegations that may provide complete defenses to only certain claims, but not others."); *Amato v. Mastria*, No. 06-5626, 2007 WL 837097, at *3 (D.N.J. Mar. 16, 2007) ("[The defendant] must demonstrate the existence of a meritorious defense to the entire case before the Court should even consider whether to vacate the default.").

In any event, the Court finds both defenses to be devoid of any merit. First, Ultra and Felix's brief does not expand on the failure to state a claim defense, and as the Court will discuss below, the Complaint properly alleges both contractual claims. (*See infra* Part III.B.2.b.). Second, although the Proposed Answer asserts that Plaintiff is barred from claiming attorneys' fees due to "Plaintiff's wrongful conduct" (Proposed Answer at 4), Ultra and Felix provide no factual allegations or evidence in support. Thus, the Court need not credit such "simple denials or conclusionary statements." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (noting that the defendant must show a meritorious defense by alleging "specific facts" in support).[2]

---

[2]     Moreover, Ultra and Felix admit that Plaintiff's invoices contain a clause requiring Ultra to pay Plaintiff interest on all unpaid amounts, as well as attorneys' fees and costs associated with collecting the unpaid amount. (*See* Proposed Answer ¶ 10). In their brief, Ultra and Felix offer a confusing argument that "as a matter of law [Ultra and Felix] assert that the addition of language to an invoice providing for interest and attorneys' fees if the invoice is not

Ultra and Felix's brief does appear to raise other defenses, but these also miss the mark. Apparently in connection with Counts One and Two, Ultra and Felix argue that "at no time has Ultra paid out a total amount to the venders of Produce to Ultra less than the total amount which Ultra had received in payments for Produce" and that Plaintiff "has submitted no proof of any misuse of PACA Trust funds – only rank speculation." (D.E. No. 57-2 at 5). But this ignores that Plaintiff has alleged—and Ultra and Felix have conceded—that Plaintiff is a qualified PACA trust beneficiary for the Produce Ultra purchased and accepted from Plaintiff, and that Ultra has paid nothing for that Produce. (*See generally* Compl.; D.E. No. 57-2 at 4; TRO Hr'g Tr. at 10:25–11:3). These facts conclusively establish that Ultra violated its obligations to pay trust funds and to make full payment promptly. *See* 7 U.S.C. §§ 499b(4) & 499e(c)(5).

Finally, apparently in connection with Count Four, Ultra and Felix contend in their brief, as "an aside," that Felix should not be personally liable because Ultra has not paid him anything except reimbursements not exceeding $10,000 since May 2018, and he has not owned any interest in Ultra since "mid 2018." (D.E. No. 57-2 at 6; *see also* D.E. No. 30 (asserting that "Michael Felix has not had ownership in Ultra Fresh LLC since June ,28 2018 [sic]")). But the Proposed Answer admits "that Felix was an officer of Ultra and occupied a position of control over PACA trust assets at some relevant times." (Proposed Answer ¶¶ 4 & 20). And further, during the contempt hearing Plaintiff provided evidence that Felix remains as Ultra's "Managing Member/National Operations Manager" (*see* D.E. No. 34, Ex. C), which Felix's declaration confirms. (*See* D.E. No.

---

timely paid can create a contract obligation as the invoices occur after the contract has been made and, presumably, after the contract has been performed by the Plaintiff." (D.E. No. 57-2 at 7–8). To the extent Ultra and Felix meant to argue that the interest and attorneys' fee clause *cannot* create a contractual obligation, they provide neither an explanation nor citations to the record or case law in support. To the contrary, federal courts uniformly enforce such provisions in PACA trust cases. *See, e.g.*, *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 285 (3d Cir. 2006) (noting that PACA permits recovery of "not only the price of commodities but also related expenses" (quoting *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004)); *Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1225–26 (9th Cir. 2002); *Brigiotta's Farmland Produce & Garden Ctr., Inc. v. Przykuta, Inc.*, No. 05-273S, 2006 WL 3240729, at *5–7 (W.D.N.Y. July 13, 2006).

57-1 ¶ 1).[3]

Moreover, Plaintiff avers that "the evidence uncovered to date indicates that Ultra is judgment-proof." (D.E. No. 59 at 7). And the evidence in this record undoubtedly supports this assertion and the finding that Defendants dissipated the PACA trust assets. (*See, e.g.*, D.E. No. 4-3 ¶ 11 (attesting that Felix stated that Ultra lacks the money to pay the balance in full due to numerous claims filed against Ultra); D.E. No. 14 at 2 (noting that Ultra's banking institution informed Plaintiff that Ultra's account has a negative balance); *see also* Tel. Conf. Tr. at 15:20–17:3, Jan. 25, 2019 (describing a transfer made at the direction of Felix from one of Ultra's bank accounts to a bank account held by an entity named "U.F. Warehouse LLC" as "a loan" and explaining that the owner is "someone that Mr. Felix knows professionally in the industry")). In fact, on January 14, 2019, the Court received copies of several financial documents belonging to Ultra that had been served on Plaintiff pursuant to the Court's November 16, 2018 Order and January 10, 2019 Order. (D.E. Nos. 43 & 62[4]). These documents show that as of November 30, 2018, Ultra had a negative total equity of -$155,018, and its JP Morgan Chase N.A. bank account had a negative balance. (D.E. No. 62 at 13 & 21). Thus, this record demonstrates that the PACA trust assets have been dissipated. *See* 7 C.F.R. § 46.46(a)(2) (defining dissipation as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with

---

[3] Additionally, as the Court noted in its January 9, 2019, oral Opinion, "Mr. Levinson appeared via telephone on behalf of Mr. Felix and Ultra Fresh during the October 25, 2018 hearing and subsequent settlement discussions. At no point did Mr. Levinson indicate that Felix had no ownership of Ultra Fresh or otherwise had no control over Ultra Fresh." (D.E. No. 37 at 8:7–12 (citation omitted)). And moreover, the relevant transactions occurred between May 15, 2018 and June 5, 2018, and therefore, before Felix allegedly ceased having ownership interest in Ultra Fresh on June 28, 2018. (*See* D.E. No. 30).

[4] These included Ultra's list of accounts receivable and accounts payable, balance sheet, profit & loss statement, and bank statements dated between May and November 2018 for a JP Morgan Chase, N.A. account ending in account number 3286. On June 24, 2019, the Court entered an Order and placed a copy these documents on the docket. (D.E. No. 62).

11

produce transactions").

Ultra and Felix fail to provide anything to the contrary, despite having an opportunity to file a reply brief. Rather, Ultra and Felix have only offered "simple denials or conclusory statements," *$55,518.05 in U.S. Currency*, 728 F.2d at 195, in their Proposed Answer. (*See* Proposed Answer ¶ 21 (asserting that Ultra and Felix "deny the allegations contained in paragraphs 26, 27, and 28 of the Complaint)). Therefore, this record supports the finding that Felix had control over Ultra and the PACA trust, the trust assets have been dissipated, and Felix's actions and his failure to preserve the trust assets (by for example, "loaning" funds from Ultra's bank accounts to another company) encumbered the trust funds rendering them unavailable to Plaintiff. This establishes Felix's personal liability, regardless of any allegations relating to his compensation and current ownership status. *See Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005) ("An individual who is in the position to control the [PACA] trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act." (citation omitted)); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) ("[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier." (citation omitted)); *accord Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705–06 (2d Cir. 2007) (collecting cases).

Consequently, Ultra and Felix do not make a prima facie showing of a meritorious defense. Therefore, this factor weighs heavily in favor of Plaintiff.

### b. Culpability of Ultra and Felix

The Court next finds that Ultra and Felix are culpable for their default. To find this factor in favor of granting a default judgment, district courts must find "flagrant bad faith" on the part of

the defendant.  *Emcasco Ins. Co.*, 834 F.2d at 75 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).  Evidence that defendant's conduct was willful or in bad faith supports a finding that the defendant's culpability lead to the default.  *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).  Moreover, the culpability of the defendant is not limited to failing to file an answer: "Certainly 'willfulness' and 'bad faith' include acts intentionally designed to avoid compliance with court notice."  *Hritz*, 732 F.2d at 1184.  Thus, "[r]eckless disregard for repeated communications from [the plaintiff] and the court . . . can satisfy the culpable conduct standard."  *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (quoting *Hritz*, 732 F.2d at 1183).

Ultra and Felix argue that while they can "be viewed as willfully failing to comply with one or more of the Court's orders in this matter, they cannot be found to have willfully or in bad faith failed to timely file their answer to the Complaint."  (D.E. No. 57-2 at 8).  Particularly, Ultra and Felix contend that they were represented by Levinson "throughout the period ending with the deadline by which [Ultra and Felix] were required to file an answer" and that they reasonably believed he was taking all reasonable steps to defend them.  (*Id.*).  For support, Ultra and Felix cite to Felix's declaration which provides vague assertions that Levinson "asked for and was paid fees for his legal services representing Ultra and [Felix] in connection with this litigation."  (D.E. No. 57-1 ¶¶ 5 & 8–9).  But Felix does not identify or provide any evidence of these unspecified "fees" and unspecified "legal services."  (*See id.*).

Vague allegations aside, these assertions are belied by the record in this case.  Plaintiff initiated this action on October 1, 2018.  (Compl.).  Soon after, the parties reached a settlement, but Defendants subsequently repudiated it and ceased all communications with Plaintiff.  (D.E. No 4-3 ¶ 12).  This prompted Plaintiff to file a motion for an order to show cause with temporary

restraints. (*See* D.E. No. 4). On October 25, 2018, the Court held a hearing on Plaintiff's application for temporary restraints, during which Levinson appeared telephonically on behalf of Ultra and Felix. (D.E. No. 7). Levinson then represented Ultra and Felix during a subsequent settlement conference before Judge Mannion, where a settlement was placed on the record. But a few days later Ultra and Felix repudiated this settlement as well. (D.E. No. 8). Thereafter, the Court issued the temporary restraining order and found that it appeared that "Defendants ha[d] engaged in a bait-and-switch tactic designed to stall Plaintiff's efforts to collect the debt it is owed." (D.E. No. 13 at 7).

Further, the record demonstrates that Plaintiff served Ultra and Felix directly—by a variety of means, including e-mails and overnight deliveries to Ultra's principal place of business and Felix's home address—with all post-settlement submissions and Court orders. Particularly, Ultra and Felix were served directly with the Court's November 1, 2018 Order to show cause temporarily restraining Defendants (D.E. No. 14); Plaintiff's motion for default judgment (D.E. No 59 at 9 (CM/ECF Pagination)); Plaintiff's request that the preliminary injunction be granted as unopposed (D.E. No. 16); the Court's November 9, 2018 Order scheduling a telephone conference (*id.*); the Court's Order preliminarily enjoining Defendants (D.E. No. 22); Plaintiff's motion to hold Defendants in contempt; and the Court's Order that Defendants show cause why they should not be held in contempt (D.E. Nos. 25 & 33). Despite this, Ultra and Felix failed to contact Plaintiff, failed to appear at scheduled telephone conferences and hearings, failed to abide by the Court's orders, and failed to appear at the January 4, 2019 hearing on Plaintiff's motion to hold Defendants in contempt. (*See, e.g.*, D.E. Nos. 15, 18 & 32). It was not until the Court entered its January 10, 2019 Order finding Ultra and Felix in contempt, that a representative from Defendants (a "workout specialist") *finally* contacted Plaintiff. (D.E. No. 39). And it was not until this Court warned that

it would issue a warrant for the arrest of Felix, that Felix finally made a formal appearance in this case.  (*See* D.E. Nos. 48 & 50).

Conveniently, Felix now asserts that he and Ultra did not become aware that Levinson was not representing them in this action until January 10, 2019.[5]  (*See* D.E. No. 57-1 ¶¶ 7 & 9).  But as just outlined, the record squarely contradicts this self-serving assertion.  For example, the Court's preliminary injunction Order, which Plaintiff served directly on Felix and Ultra (*see* D.E. No. 22), specifically states that "Defendants have not responded to the Complaint and are in default," and that "Defendants did not file any papers opposing the requested preliminary injunction by the November 8, 2018 deadline or request any extension of that deadline" (D.E. No. 20 at 1–2).  Thus, the Court is unsure just how Felix can now claim that it was not until January 10, 2019, that he became aware that Levinson was not "taking all actions and filings all papers reasonably necessary or appropriate in the defense" of this action.  (*See* D.E. No. 57-1 ¶ 7).  Indeed, any remaining doubt about the fallaciousness of Ultra and Felix's assertion is conclusively erased by the December 16, 2018, unsigned *pro se* letter from "Ultra Fresh, LLC."   (D.E. No. 30).  This letter requested an adjournment of the January 4, 2019 hearing on Plaintiff's motion to hold Defendants in contempt, confirming that at the very least someone at Ultra understood that Levinson was not involved in this case.  (*Id.*).

In short, this record demonstrates that Ultra and Felix engaged in more than mere negligent oversight; they engaged in a continuous pattern designed to frustrate Plaintiff's efforts to litigate its claims.  Ultra and Felix were completely uncooperative, disregarded the Court's Orders while they continued to dissipate Ultra's assets, and outright ignored this litigation despite Plaintiff's best efforts to engage them.  This complete lack of cooperation demonstrates the very "flagrant

---

[5]     Peculiarly, Ultra and Felix did not raise this argument at all during the January 25, 2019, telephone conference.  (*See generally* Tel. Conf. Tr., Jan. 25, 2019).

bad faith" contemplated by this element. *See Nationwide Mut. Ins. Co.*, 175 F. App'x at 523 (holding that the defendant's failure to respond to repeated communications was the "kind of reckless disregard" that "establishes a defendant's culpability"); *Hritz*, 732 F.2d at 1184 (holding that "we do not believe that it is an abuse of discretion for a trial judge to enter a default judgment to sanction a party who has callously disregarded repeated notices of a judicial proceeding"). Thus, even if Ultra and Felix were not willful in their initial failure to file a timely answer, Ultra and Felix fail to provide any valid reason why they failed to respond to the entry of default and all subsequent communications and Court Orders over the course of more than two months. *See, e.g.*, *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251–52 (4th Cir. 1967) (finding district court did not abuse its discretion by denying defendant's motion to set aside entry of default when defendant waited two and a half months to respond); *Wayne Rosa Const., Inc. v. Hugo Key & Son, Inc.*, 153 F.R.D. 481, 483 (D. Me. 1994) ("Defendant points to no extraordinary circumstances to explain its repeated delays in responding to this action."). Therefore, the Court finds this factor clearly weighs in favor of Plaintiff.

### c. Prejudice to Plaintiff

Prejudice is established when a plaintiff's ability to pursue the claim has been hindered by "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982). Further, a plaintiff will be prejudiced where a defendant fails to respond because "plaintiff will be left with no other means to vindicate his or her claims." *United States of America v. Tuyet Vo.*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (quoting *Smith v. Kroesen*, No. 10-5723, 2015 WL 4913234, at *5 (D.N.J. Aug. 18, 2015)).

Plaintiff argues that it has suffered prejudice because the Defendants have engaged in

conduct to "frustrate Plaintiff's PACA trust rights and to enable [Defendants] to further dissipate the PACA trust," and that Plaintiff will incur unnecessary additional legal expenses if the default is set aside. (D.E. No. 59 at 7).

Generally, delay and the costs of pursuing a litigation are not sufficient to show prejudice. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, No. 04-3393, 2004 WL 2609119, at *1 (E.D. Pa. Nov. 16, 2004), *aff'd*, 175 F. App'x 519 (3d Cir. 2006). However, the unique circumstances of this case make this element less clear-cut. As noted above, Ultra and Felix offer no meritorious defense and admit liability. Further, the record shows that despite admitting liability, Ultra and Felix have willfully disregarded this action and the Court's preliminary injunction Order, forcing Plaintiff to undertake costly and otherwise unnecessary actions in order to protect its rights. In fact, in their brief Ultra and Felix admit that they can "be viewed as willfully failing to comply with one or more of the Court's orders in this matter." (*See* D.E. No. 57-2 at 8). Equally relevant are the unique aspects of PACA, since "once the PACA trust is dissipated, it is almost impossible for a beneficiary to obtain recovery." *Tanimura & Antle, Inc. et al. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 139 (3d Cir. 2000). And as discussed above, Ultra and Felix have dissipated the PACA trust. Thus, despite admitting liability and despite the Court's preliminary injunction Order, Ultra and Felix have severely hampered Plaintiff's ability to vindicate its claims by dissipating the trust assets. Consequently, the Court finds that under the unique circumstances of this case Plaintiff will suffer further prejudice should this matter be needlessly reopened.

In short, while this Court is cognizant that the law favors disposition of claims on the merits, and therefore "in a close case doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits," *Farnese*, 687 F.2d at 764, this case does not present such

a situation. Consequently, the Court denies Ultra and Felix's cross-motion to set aside the default. (D.E. No. 57).

### 2. Plaintiff's Motion for Default Judgment

Having determined that the entry of default should not be set aside, and concurrently, that default judgment is appropriate, *see Chamberlain*, 210 F.3d at 164, the Court must now consider whether Plaintiff has sufficiently shown its entitlement to default judgment. Thus, the Court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil Inc.*, 2015 WL 6673839, at *1.

### a. Jurisdiction and Service

"In order to impose personal liability upon a defendant or obligate him or her in favor of a plaintiff, a court must be vested with jurisdiction over the parties as well as subject matter jurisdiction." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the trust provisions of PACA. 7 U.S.C. § 499e(c)(5). The Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

Moreover, the Court may exercise general personal jurisdiction over Ultra and Felix. Ultra is organized under the laws of New Jersey and its principal place of business is in Old Tappan, New Jersey. (*See* Compl. ¶ 4); *see, e.g.*, *United States v. Burgess*, No. 18-1571, 2018 WL 6040268, at *2 (D.N.J. Nov. 19, 2018). And Felix was personally served within New Jersey (*see* D.E. No. 3 at 3), thereby consenting to this Court's jurisdiction, *see Burnham v. Sup. Ct. of Ca.*, 495 U.S. 604, 619 (1990).

Finally, Plaintiff has sufficiently shown that Ultra and Felix were properly served. Plaintiff's agent served Ultra on October 9, 2018, at its principal place of business by leaving the summons and complaint with Felix, an officer of Ultra. (D.E. No. 3 at 2); *see, e.g.*, *Audi AG v. Posh Clothing, LLC*, No. 18-14254, 2019 WL 1951166, at *2 (D.N.J. May 2, 2019) (citing Fed R. Civ. P. 4(h)(1)(B)). And as noted above, Felix was also personally served that same day. (D.E. No. 3 at 2); Fed. R. Civ. P. 4(e)(2)(A). Therefore, the Court is satisfied that it has jurisdiction to enter default judgment against Ultra and Felix.

### b. Sufficiently Pleaded Causes of Action

"A consequence of the entry of a default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne*, 908 F.2d at 1149 (internal quotation marks omitted).

Plaintiff sufficiently pleads all its claims against Ultra and Felix. As discussed above, Plaintiff is the beneficiary of a properly preserved PACA trust: Plaintiff is a licensed Produce dealer under PACA; between May and June 2018, Plaintiff sold, in interstate commerce, wholesale quantities of Produce to Ultra; Plaintiff provided the required written notice to preserve the trust for each sale; Ultra accepted the Produce; and to date Ultra has failed to pay for any of the Produce it accepted. (*See* Compl. ¶¶ 3 & 7–20). Thus, Counts One and Two sufficiently plead PACA claims for failure to pay trust funds and to make full payment promptly.

Count Four also properly alleges a valid claim against Felix personally for breaching his fiduciary duty to Plaintiff. As discussed above, Plaintiff has pleaded and shown that Felix held a position of control over Ultra and the PACA trust assets; that Felix's actions and/or inaction caused Ultra to violate its duty to preserve the PACA trust for Plaintiff; and Ultra dissipated the trust assets. (Compl. ¶¶ 24–28; *see also* accompanying text to notes 3–4, *supra*); *see, e.g.*, *Paglia*, 411

F.3d at 421; *Felix Produce Corp. v. New Lots Food Corp.*, No. 08-5161, 2009 WL 2985444, at *2 (E.D.N.Y. Sept. 14, 2009); *Przykuta, Inc.*, 2006 WL 3240729, at *4. Therefore, the Court finds that Felix is personally liable for the dissipation of the PACA trust assets. *See, e.g.*, *Felix Produce Corp.*, 2009 WL 2985444, at *2.

Moreover, Counts Three and Six properly allege contractual claims. Count Three pleads a breach of contract claim against Ultra: Plaintiff and Ultra entered into a contract for the sale of goods, Plaintiff performed its obligations by delivering conforming goods and Ultra accepted them, Ultra breached the contract by failing to pay for any of the deliveries, and as a result, Plaintiff has suffered damages. (*See* Compl. ¶¶ 8, 11–14 & 21–23); *Amba v. Rupari Food Servs., Inc.*, No. 10-4603, 2016 WL 6495514, at *4 (D.N.J. Oct. 31, 2016). Similarly, Count Six properly pleads a contractual claim for interest and attorneys' fees, since Plaintiff alleges and has shown that it provided Defendants with invoices containing these additional contractual terms, (*see* Compl. ¶¶ 10–11 & 34–36; D.E. No. 4-3 ¶ 9 & Ex. 4; D.E. No. 59-1 Exs. 1–4), which as discussed previously, became enforceable terms of the parties' contracts. *See supra* note 2; *see also Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 684–87 (D.N.J. 2010) (holding that clause requiring buyer to pay attorneys' fee and interest on past due accounts, which was present in all invoices sent to buyer after delivery of each shipment was an enforceable term of the parties' contracts).

In short, Plaintiff sufficiently pleads all its claims.

### c.     Damages, Attorneys' Fees, And Interest

Plaintiff requests that the Court enter judgment against Ultra and Felix, jointly and severally, in the principal amount of $44,800, plus interest, costs, and attorneys' fees. (*See* D.E. No. 17-3 at 2). The principal amount arises from invoice numbers 25950, 25951, 25954, and

25963, which are dated May 15, May 16, May 23, and June 5, 2018, respectively. (*See* D.E. No. 4-3 ¶ 8 & Exs. 3–4). As noted above, Ultra and Felix admitted through counsel to owing this debt. (*See* TRO Hr'g Tr. at 10:25–11:3 ("No one is disputing the debt . . . . My client acknowledges that it owes the debt.")). Now, however, Ultra and Felix contend that while they "honestly admit[ ] that Ultra owes [Plaintiff] $30,655 for Produce sold by [Plaintiff] to Ultra," Ultra is entitled to receive certain "credits" for the remaining balance of $14,145. (D.E. No. 57-2 at 4). Particularly, Ultra and Felix assert that Ultra is entitled to $315 for one or more of the four unpaid transactions at issue in this case, as well as $13,830 in "overstated invoices" from four prior produce transactions that Ultra fully paid. (*Id.* at 4–5 (citing D.E. No. 57-1 ¶¶ 13 & 18)). But as the Court will explain, the record before this Court does not support Ultra and Felix's arguments.

First, Ultra and Felix assert a credit of $315 because one of the invoices at issue "is overstated by $15 due to the delivery of 2 boxes less than the number invoiced," and because Plaintiff owes Ultra $300 "as a credit for additional shipping costs incurred by Ultra." (D.E. No. 57-1 ¶ 13). But Felix and Ultra do not identify which specific transactions are at issue and provide nothing to support these assertions. By contrast, Michael J. Giglio, Plaintiff's Sale Manager, submitted a declaration with supporting evidence. (D.E. No. 59-1). Giglio explains that all of Plaintiff's Confirmation of Sale forms, which Defendants received for each order, state in bold type: "**Please note: Corrections must be reported within 24 hours of receiving this fax.**" (*Id.* ¶ 5; *see, e.g.*, *id.* at 15, 24 & 30 (CM/ECF Pagination)). Similarly, Giglio explains that all of Plaintiff's invoices, which Defendants received for each order, state in bold type: "**This invoice is deemed correct. Any discrepancies must be reported within 24 hours of receipt.**" (*Id.* ¶ 6; *see, e.g.*, *id.* at 8, 16, 25 & 31(CM/ECF Pagination); *see also* D.E. No. 4-3 Ex. 4). Giglio asserts that despite these clear disclaimers he "never received any corrections or objections to any

Confirmation of Sale" or invoice sent to Ultra regarding either the four transactions at issue in this litigation or the four prior transactions. (D.E. No. 59-1 ¶¶ 5 & 6). Rather, the "first and only such corrections or objections are those alleged in Ultra and Felix's cross-motion." (*Id.*). Importantly, Ultra and Felix have not argued or even suggested that (i) Ultra's purchase order expressly limited its acceptance to the terms of its offer; (ii) the additional terms in the Confirmation of Sale and invoices materially alter the original agreement; or (iii) Ultra provided Plaintiff with a reasonably timely objection to these additional terms. *Cf.* N.J. Stat. Ann. § 12A:2-207(2) & cmts. 4 & 5; *see also Rocheux Int'l of N.J., Inc.*, 741 F. Supp. 2d at 684–87 (noting that additional terms present in all invoices sent to buyer did not surprise buyer or create an undue hardship). Thus, the Court finds that Ultra is not entitled to this belatedly claimed $315 credit.

Next, Ultra and Felix contend that Ultra is entitled to a $10,500 credit for Ultra Purchase Order No. 4027 and Plaintiff Invoice No. 25927, because Ultra erroneously paid for the order despite not receiving it. (D.E. No. 57-1 ¶ 15). Aside from Felix's declaration, Ultra and Felix provide nothing to support this allegation. On the other hand, Giglio explains—and Ultra and Felix do not dispute—that the instant cross-motion is the first time Defendants have raised this issue. (D.E. No. 59-1 ¶ 8). Moreover, Plaintiff attached supporting documentation of this transaction, including a Bill of Lading signed by "Rolando" of Ultra acknowledging receipt of the Produce on April 13, 2018. (D.E. No. 59-1 Ex. 1). Ultra and Felix fail to provide anything to the contrary, and thus, this record supports the finding that Ultra did in fact receive the shipment. Consequently, Ultra is not entitled to the $10,500 credit.

Ultra and Felix next contend that Ultra is entitled to a $567 credit for Ultra Purchase Order No. 5041 and Plaintiff Invoice No. 25933, because the initial Confirmation of Sale stated a delivery price of $12.95 per unit, which was later increased to $13.30. (D.E. No. 57-2 at 4–5). Ultra and

Felix also contend that Ultra is entitled a $243 credit for Ultra Purchase Order No. 5003 and Plaintiff Invoice No. 25942, because the initial Confirmation of Sale stated a delivery price of $11.75 per unit, which was later increased to $11.90. (*Id.* at 5). But Giglio explains that he sent corrected Confirmation of Sale forms with the increased price for these two transactions "because the cost of freight (which is a component of the 'delivered' price) had increased," necessitating the change in price. (D.E. No. 59-1 ¶¶ 9 & 11). Further, the invoices sent to Ultra reflected the increased delivered price, which Ultra paid without dispute and without ever objecting to either the revised Confirmation of Sale forms or the corresponding invoices. (*Id.*). Thus, Ultra is not entitled to this alleged credit.

Finally, Ultra and Felix contend that Ultra is entitled to a $2,520 credit for Ultra Purchase Order No. 5035 and Eagle Invoice No. 25957, because "the invoice was for an amount in excess of the amount due by the sum of $2,520." (D.E. No. 57-2 at 5). But Ultra and Felix do not provide any basis or explanation for this assertion. (*See id.*; D.E. No. 57-1). Moreover, Giglio explains that while he had to send a revised Confirmation of Sale because he had originally written an incorrect pick-up number, the revision "did not increase or change the price for the pineapples ordered." (D.E. No. 59-1 ¶ 10 & Ex. 3). Further, as with all the other credits Ultra now asserts, none of the Defendants ever objected to the revision or the corresponding invoice; rather, Ultra paid the invoice without objection. (*Id.*).

In short, on this record the Court finds that Ultra has not made a prima facie showing that it is entitled to any of these belatedly asserted credits. Therefore, Ultra and Felix are jointly and severally liable for the full principal amount of $44,800. Moreover, the Court also finds that Plaintiff is entitled to contractual prejudgment interest in the amount of 1.5% per month (18% annually) on overdue accounts, as well as reasonable attorneys' fees and costs. Since Plaintiff has

incurred additional legal fees since filing its motion for default judgment, the Court will allow Plaintiff to supplement the record before the Court enters judgment.

## IV. Conclusion

For the reasons stated above, the Court DENIES Felix and Ultra's cross-motion to set aside the entry of default. The Court also GRANTS-in-part and DENIES-in-part Plaintiff's motion for default judgment: The Court denies Plaintiff's motion for default judgment against Hidalgo *without prejudice*, but grants Plaintiff's motion for default judgment against Ultra and Felix. An appropriate Order accompanies this Opinion.

_s/Esther Salas_____
**Esther Salas, U.S.D.J.**